```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------

UNITED STATES OF AMERICA F/U/B/O
SCHINDLER ELEVATOR CORPORATION
AND SCHINDLER ELEVATOR CORPORATION,
                                              24-cv-3108 (JGK)
                         Plaintiff,
                                              MEMORANDUM OPINION
              - against -                     AND ORDER

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,

                         Defendant.
------------------------------------
```

**JOHN G. KOELTL, District Judge:**

The plaintiff, Schindler Elevator Corporation ("Schindler"), brought this action in the name of the United States and for its use and benefit pursuant to the Miller Act, 40 U.S.C. § 3131 et seq. Schindler claims that it is owed various amounts that it earned as a subcontractor for Integrated Construction Enterprises Inc. ("ICE") on a construction project for the United States Government. Schindler sued Philadelphia Indemnity Insurance Company ("PIIC"), ICE's surety. Schindler claims that it was not fully compensated for its performance of elevator repair and maintenance ("Work") at the Thurgood Marshall United States Courthouse at 40 Foley Square, New York, New York 10007 ("Thurgood Marshall Courthouse").

ICE intervened in the action and answered Schindler's complaint. ICE also asserted counterclaims against Schindler for fraud and unjust enrichment, claiming that Schindler submitted

inflated invoices and false certified payrolls to ICE demanding payment for work that was not performed. Schindler has moved to dismiss ICE's amended counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion to dismiss is **denied.**

I.

For purposes of this motion, the following facts alleged in ICE's Amended Counterclaims are accepted as true unless otherwise noted.

This action arises from a construction project for elevator shaft repairs and maintenance at the Thurgood Marshall Courthouse. Am. Counterclaims ¶ 8, ECF No. 37.[1] In June 2021, the General Services Administration ("GSA"), which is the government agency responsible for maintaining federal buildings, retained ICE for the project. Id. ¶¶ 7-9. In August 2021, ICE hired Schindler as a subcontractor to assist in this project "pursuant to estimates and purchase orders." Id. ¶ 11. Edward Agnew was Schindler's Field Superintendent and Project Manager for the Work. Id. ¶ 17. Paul Cherbaka was ICE's Project Manager for the Work. Id. ¶ 18.

A dispute arose regarding Schindler's invoices and work. Representatives of ICE and GSA informed Schindler on multiple

---

[1] The Court has subject matter jurisdiction over this action pursuant to 40 U.S.C. § 3133(b)(3).

occasions of the need for invoices and supporting certified payrolls ("CPs") listing the specific hours worked by Schindler's workers to be submitted in a timely fashion. See id. ¶¶ 10-16, 19-21. In April 2022, Cherbaka emailed Agnew informing him that GSA would not pay ICE without Schindler's CPs. Id. ¶ 19. In June 2022, Roxanne Gill, GSA's Contracting Officer for the project, emailed Timothy Whalen, Schindler's General Manager, and Agnew, reminding them of the requirement to provide CPs on a weekly basis. Id. ¶ 21. Gill also reminded Schindler that it had been behind on CPs since April 2022. Id.

ICE alleges that, in April 2022, Schindler submitted fraudulent invoices #7100487316 and #7100488701 for payment in the total amount of $32,170.64 for work purportedly performed for the week ending April 20, 2022. Id. ¶¶ 24, 28. Agnew represented to Cherbaka and ICE that the hours worked by Schindler's employees were reported accurately in the supporting CPs submitted by Schindler. Id. ¶ 25. According to ICE, ICE paid Schindler $32,170.64 in February 2023, in direct reliance upon the representations set forth in the CPs. Id. ¶ 26. ICE alleges that it later learned, however, that Schindler had not performed any work for ICE on April 15, 19, and 20, 2022, and that these invoices therefore inflated payment for an extra three days of work. Id. ¶¶ 27-28. ICE alleges that Schindler charged ICE $16,413.52 for work that was not performed during the week

3

ending April 20, 2022. Id. ¶ 29. Cherbaka's review of the daily logs for the period billed revealed this inconsistency—after payment had already been made. Id. ¶ 28.

ICE alleges that, on April 13, 2022, Schindler submitted fraudulent invoice #7100507036 in the total amount of $10,923.68 for work that Schindler claimed would be performed on November 12, 2022. Id. ¶¶ 35, 37. In reliance on the corresponding CP submitted by Schindler and on Agnew's assurances that Schindler had recorded its employees' time accurately, ICE paid Schindler the invoiced amount in February 2023 for work allegedly performed on November 12, 2022. Id. ¶¶ 34-35. After payment had been made, Cherbaka allegedly reviewed the project records and uncovered that Schindler did not perform any work for ICE on November 12, 2022. Id. ¶ 36.

ICE alleges that, in March 2022, Agnew submitted to Cherbaka invoices #7100483987 and #7100486432 for payment in the total amount of $23,211.00, for work allegedly performed by Schindler for the week ending March 16, 2022. Id. ¶¶ 42-44. On January 24, 2023, Agnew submitted to Cherbaka a corresponding CP for the week ending March 16, 2022, representing that the employees identified on the CP performed work on the identified dates. Id. ¶ 44. In the CP, which was signed by Agnew, Agnew acknowledged that "THE WILLFUL FALSIFICATION OF ANY OF THE ABOVE STATEMENTS MAY . . . SUBJECT THE CONTRACTOR OR SUBCONTRACTOR TO

4

CIVIL OR CRIMINAL PROSECUTION." Id. ¶¶ 44, 46. The CP listed "Grouzis, Antonio," as a mechanic who allegedly worked for eight hours on each of March 11, 12, and 15, 2022; and "Santro, Paul," as a mechanic who allegedly worked for eight hours on March 12, 2022. Id. ¶¶ 47-48. However, ICE alleges that, soon after ICE paid Schindler, Cherbaka discovered that the representations in the CP—that these Schindler mechanics performed work on certain days in March 2022—were not supported by ICE's or other project records. Id. ¶¶ 49-50. ICE also alleges that photographs included in the construction manager's daily report from March 15, 2022, show the presence of scaffolding inside the elevator shafts, which made any work by Schindler an impossibility that day. Id. ¶ 51.

ICE alleges that Schindler submitted two separate CPs for identical labor performed by the same four individuals on August 15 and 16, 2022. Id. ¶ 53. ICE claims that it was impossible for the same four workers to work double shifts on the same day, which meant that at least one of the CPs had to be fraudulent. Id. In the first CP, ICE alleges that the work performed was labor to replace hoist ropes on elevator #15. Id. ¶ 54. In the first CP, which Agnew signed and submitted on December 12, 2022, Agnew represented that four individuals worked for 8 hours on August 15 and 16, 2022. Id. ¶¶ 57-63. Based on these representations, in February 2023, ICE paid Schindler $28,623.00

5

for that work. Id. ¶ 64. In the second CP, which Agnew signed and submitted on January 24, 2023, Agnew represented that the same four individuals—listed in a different order than in the first CP—worked for 8 hours on the same two days: August 15 and 16, 2022. Id. ¶¶ 53, 72-79. Based on Agnew's representations in the second CP, ICE paid Schindler $47,264.00 on February 13, 2023, for the work identified in the second CP. Id. ¶ 79.

ICE also alleges that, on January 24, 2023, Schindler signed and submitted a CP for the week ending December 27, 2022. Id. ¶ 83. ICE alleges that this CP represented that certain workers performed work on December 21, 22, and 27, 2023, when in fact those workers did not perform the work on those days. Id. ¶¶ 86-91. Cherbaka later discovered that the representations that Agnew made in the CP were false. Id. ¶¶ 89-92.

## II.

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d

Cir. 1985).[2] To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

A motion to dismiss a counterclaim is decided under the same standards as a motion to dismiss a plaintiff's claim. See, e.g., Optima Media Grp. Ltd. v. Bloomberg L.P., 383 F. Supp. 3d 135, 141 (S.D.N.Y. 2019); Dentsply Int'l Inc. v. Dental Brands

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

for Less LLC, No. 15-cv-8775, 2016 WL 6310777, at *2 (S.D.N.Y. Oct. 27, 2016).

**III.**

**A.**

Schindler contends in passing that ICE violated Federal Rule of Civil Procedure 15 by failing to seek Schindler's consent or leave of the Court before amending ICE's counterclaims. See Fed. R. Civ. P. 15(a)(1)-(2) (providing that "[a] party may amend its pleading once as a matter of course no later than . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier" but must otherwise seek the opposing party's written consent or the court's leave). As ICE correctly argues, ICE's amendment was timely. The Court granted ICE's motion to intervene as a defendant and counterclaimant on October 28, 2024. See ECF No. 26. Schindler filed its initial motion to dismiss ICE's counterclaims on December 3, 2024. See Mot. to Dismiss Intervenor's Counterclaims, ECF No. 33. ICE filed its Amended Counterclaims on December 24, 2024—21 days after Schindler filed its first Rule 12(b)(6) motion. See Am. Counterclaims. Therefore, ICE did not violate Rule 15(a).

**B.**

Schindler seeks dismissal of ICE's fraud claim, arguing that ICE has failed to plead at least one of the

8

misrepresentations with particularity and insufficiently alleged scienter and justifiable reliance. In New York, there are five elements of a fraud claim: "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." Schlaifer Nance & Co. v. Est. of Warhol, 119 F.3d 91, 98 (2d Cir. 1997).

First, Schindler contends that ICE has failed to allege fraud with particularity pursuant to Rule 9(b). See Fed. R. Civ. P. 9(b). In other words, ICE must allege the who, what, when, where, and how of the alleged fraud. See Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 197 (2d Cir. 2013). Schindler focuses on a few allegations that are fairly general, such as those alleging, "[u]pon information and belief," that Schindler "charged ICE . . . for work that should have been billed to a completely different entity under a separate maintenance contract." Am. Counterclaims ¶¶ 93–95. However, Schindler's argument ignores all the other allegations that contain specific details about certain representations made by Agnew in CPs that ICE alleges were false and made with the intent to deceive. For example, ICE provides dates, invoice numbers, and payment amounts that it purportedly discovered to be misrepresented by Agnew and Schindler along with details as

9

to why these statements were false. See id. ¶¶ 23-26, 35-43, 47-54, 69-82, 86-92. ICE's amended counterclaims detail the who, what, when, where, and how for specific alleged misrepresentations. Therefore, Schindler's contention that ICE has failed to allege fraud with particularity is without merit.

Schindler also contends that ICE has failed to allege scienter adequately. Schindler characterizes ICE's scienter allegations as "bare, conclusory," and "skeletal." Schindler Br. at 10, ECF No. 41. To plead scienter, ICE must allege "that the defendant knew of the falsity of the representation being made to the plaintiff." Meyer v. Seidel, 89 F.4th 117, 138 (2d Cir. 2023). Although Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," to satisfy the pleading standard established by Iqbal, general allegations of a defendant's knowledge may still be insufficient if the complaint does not "contain enough factual allegations to make the claim one that is not just conceivable but plausible." Meyer, 89 F.4th at 139 (citing Fed. R. Civ. P. 9(b)). "At the pleading stage, a fraud plaintiff may establish a strong inference of scienter by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Rapay v. Chernov, No. 16-cv-4910, 2017 WL 892372, at *6 (S.D.N.Y. Mar. 6, 2017).

ICE has alleged facts that provide strong circumstantial evidence that Schindler knew of the falsity of the representations made to ICE. Agnew was Schindler's Field Superintendent and Project Manager for the Work. Am. Counterclaims ¶ 17. ICE alleges that Agnew was aware of the misrepresentations about when and how much work was performed, and by whom, and submitted falsified CPs to ICE for payment. See, e.g., id. ¶¶ 23-26, 32-34, 38, 44-54, 58-63, 68. According to ICE, on several occasions, Agnew certified that specific workers performed the work for hours listed on the CPs when in fact those workers had not worked on the days listed. See, e.g., id. ¶¶ 35-36, 38, 44-52. Viewed together, ICE's allegations provide strong circumstantial evidence of at least recklessness—if not conscious misbehavior—on the part of Agnew and Schindler.

Schindler also argues that ICE has failed to plead justifiable reliance. New York courts have made clear that analyzing a party's reliance is highly fact intensive and not amenable to resolution at the pleading stage. See Bennett v. Bennett, 203 N.Y.S.3d 754, 759 (App. Div. 2024). In this case, ICE's Project Manager, Cherbaka, allegedly relied on Schindler's CPs to authorize payments for the Work. See Am. Counterclaims ¶¶ 19, 20, 26, 34, 64, 79. The CPs submitted by Agnew represented that he was aware that the willful falsification of any of the above statements would subject the contractor or

11

subcontractor to civil or criminal prosecution. See id. ¶¶ 46, 59, 74, 85; see also Ex. B to Compl. at 7, 30, 38, 45, 52, 54, 58, 60, 78, 91, 93, 103, 105, 107, 117, 137, 139, 146, 170, 172, 174, 176, 178, 188, 196, 202, 204, 211, 218, 226, ECF No. 7-2. Schindler's argument that ICE should or could have discovered issues with the CPs on its own is unavailing because a subsequent investigation is not warranted if there is a written representation that certain facts are true. See DDJ Mgmt., LLC, v. Rhone Grp., LLC, 931 N.E.2d 87, 91 (N.Y. 2010). In this case, ICE reasonably relied on Schindler's representations given Agnew's statements.

Accordingly, Schindler's motion to dismiss ICE's fraud claim is **denied**.

### C.

Schindler has also moved to dismiss ICE's claim for unjust enrichment, arguing that an unjust enrichment claim cannot proceed when the terms of the dispute are governed by a contract and that the unjust enrichment claim is duplicative of the fraud claim.

To prevail on its claim for unjust enrichment under New York law, ICE must establish that (1) Schindler benefitted, (2) at the expense of ICE, and (3) equity and good conscience require restitution. See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir.

2016). Further, "unjust enrichment is not a catchall cause of action to be used when others fail." Anhui Aido Garment Co., Ltd. v. Stern, No. 24-cv-1572, 2025 WL 1663860, at *8 (S.D.N.Y. June 12, 2025).

Schindler contends that the unjust enrichment claim cannot survive where there is a valid contract in effect. A valid contract generally precludes recovery in quasi-contract for events arising out of the same subject matter. Supply & Bldg. Co. v. Estee Lauder Int'l, Inc., No. 95-cv-8136, 1999 WL 178783, at *6 (S.D.N.Y. Mar. 31, 1999); see also Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd., 157 F. Supp. 3d 352, 370-71 (S.D.N.Y. 2016). However, for a binding contract to exist, there must be agreement between the parties regarding material terms. See, e.g., Wiggins v. Hain Pure Protein Corp., 829 F. Supp. 2d 231, 237 (S.D.N.Y. 2011).

In this case, there are disputes as to the material terms of the purported contract. Although ICE admits that there were documents governing payment for the Work, ICE contends that some of these documents were fraudulently produced by Schindler and that ICE relied on these fraudulent documents in paying Schindler. There are factual disputes as to the material terms and validity of the purported contract governing the Work. As a result, at this stage, Schindler's argument that the existence

of a valid contract precludes ICE from bringing an unjust enrichment claim is unavailing.

Schindler also argues that the unjust enrichment claim is duplicative of the fraud claim. However, although ICE's fraud and unjust enrichment claims arise out of the same set of facts, the elements of a fraud claim and an unjust enrichment claim differ. Notably, a fraud claim requires an intent to defraud while an unjust enrichment claim does not. Compare, e.g., Schlaifer Nance, 119 F.3d at 98 (listing elements of a fraud claim), with, e.g., Beth Israel Med. Ctr., 448 F.3d at 586 (listing elements of an unjust enrichment claim). In this case, unlike in cases where courts have found unjust enrichment claims duplicative, ICE "could plainly succeed on its unjust enrichment claim and fail on its other claim[]." Anhui Aido, 2025 WL 1663860, at *8; see also In re Skat Tax Refund Scheme Litig., 356 F. Supp. 3d 300, 325 (S.D.N.Y. 2019) ("A claim is alternative and not duplicative if a plaintiff may fail on one but still prevail on another."). Therefore, Schindler's argument that ICE's unjust enrichment claim is duplicative of its fraud claim is without merit. The motion to dismiss ICE's unjust enrichment claim is **denied**.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments

...

are either moot or without merit. For the foregoing reasons, the motion to dismiss is **denied**. The Clerk is respectfully directed to close ECF No. 40. Schindler should file an answer to ICE's amended counterclaims by **July 30, 2025**.

**SO ORDERED.**

Dated:   New York, New York
         July 16, 2025

_____
John G. Koeltl
**United States District Judge**